UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 21 CR 239 |
| v. | |
| DANIEL M. ROSENBAUM | Judge Manish S. Shah |

## EMERGENCY MOTION TO REVOKE ORDER OF RELEASE

The United States of America, through its attorney, John R. Lausch, Jr., United States Attorney for the Northern District of Illinois, files this emergency motion pursuant to Title 18, United States Code, Section 3148, for revocation of the order of release for defendant Daniel M. Rosenbaum. R. 11, 47. As set forth below, there is probable cause to believe that, following his indictment in the instant case, Rosenbaum fraudulently induced one or more individuals to invest money with him, which expressly violates the conditions in Rosenbaum's order of release prohibiting him from violating any federal, state, or local law while on release and from having any involvement "in the sale, purchase, or distribution of any investment or insurance product to any individual outside of defendant's immediate family." R. 11, Order Setting Conditions of Release at 1-2. Rosenbaum's repeated and flagrant disregard of this Court's conditions of release warrants revocation of his bond, his immediate arrest, and pretrial detention.

## BACKGROUND

### I. Procedural Background

On April 15, 2021, Rosembaum was charged by indictment with two counts of

mail fraud and three counts of wire fraud. R. 1. The indictment alleged, among other things, that Rosenbaum falsely told four victims that he would purchase annuities for them through various insurance companies when Rosenbaum knew that he would not purchase such annuities and instead would convert the victims' money to his personal use. *Id.* at 2. Further, the indictment alleged that, in order to conceal the fraud, Rosenbaum falsely promised victims that he would return the annuity premiums that the victims provided when he knew that he had spent the victims' money for his personal benefit and was not able to repay them. *Id.* at 3.

Rosenbaum was arraigned a week after he was indicted on April 22, 2021, and entered a plea of not guilty to each count of the indictment. R. 14. On that same date, the Court entered an order releasing Rosenbaum on agreed conditions. R. 11, 14. One of the conditions prohibited Rosenbaum from violating any federal, state, or local law while on release, and another condition prohibited Rosenbaum from having any involvement in the sale, purchase, or distribution of any investment or insurance product to any individual outside of his immediate family. R. 11 at 1-2. The agreed conditions of release—which Rosenbaum read, acknowledged, and signed—advised him that violation of any of the conditions could result "in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court[.]" *Id.* at 3.

## II. Rosenbaum Violates This Court's Condition of Release Prohibiting Him from Operating a Motor Vehicle.

On May 23, 2022, the Pretrial Services Office filed a report with the Court detailing several driving infractions and verbal warnings that Rosenbaum received

while on pretrial release. R. 33. Following that report, on August 8, 2022, this Court entered an agreed order modifying Rosenbaum's pretrial conditions of release to prohibit him from operating a motor vehicle. R. 37.

Notwithstanding that express prohibition, on or about October 13, 2022, Rosenbaum was cited by Wisconsin law enforcement for operating a vehicle on a suspended driver's license, which led to the filing of a report by the Pretrial Services Office on October 20, 2022. R. 46. Following that report, this Court held a hearing on October 27, 2022, to address Rosenbaum's violation of his pretrial conditions of release and modified Rosenbaum's conditions to impose the condition of home incarceration with location monitoring. R. 47. About a month later, on November 11, 2022, this Court modified the conditions of release on defendant's motion and replaced the home-incarceration condition with a home-detention condition that allowed Rosenbaum movement to work, as long as he continued not to operate a motor vehicle. R. 49.

Most recently, on December 1, 2022, the parties filed a joint status report notifying the Court that they were engaged in plea negotiations. R. 50.

## III. The Government Learns that Rosenbaum Took $50,000 from Individual A under the Guise of an Investment.

Between December 9, 2022, and December 16, 2022, FBI Special Agents conducted multiple interviews of Individual A, who resides in Indiana and works as a teacher.[1] During the interviews, Individual A provided the following information:

---

[1] The government will provide the Court, defense counsel, and pretrial services under separate cover with the interview reports of Individual A and supporting materials.

Individual A has known Rosenbaum for approximately 37.5 years, and they have been traveling to see each other for the past 10 years. Individual A has visited Rosenbaum in Wisconsin, and Rosenbaum has visited Individual A in Indiana.

Individual A's mother passed away in December 2021, and in the summer of 2022, Individual A received approximately $95,000 from her mother's estate. Individual A wanted to use some of that money to purchase a home for Individual A and Individual A's son. Individual A knew that Rosenbaum was involved with a financial planning company; as a result, Individual A asked Rosenbaum for advice on how to invest the money so that Individual A could generate additional funds to purchase a home. Rosenbaum told Individual A that Individual A should invest in a short-term annuity that would generate an extra $3,000 for Individual A.

Rosenbaum instructed Individual A to write him a check for $50,000 for the investment, which Individual A did on August 14, 2022. Pursuant to Rosenbaum's instruction, Individual A made the check payable to "Rosenbaum Family Planning" and personally handed the check to Rosenbaum to invest. Individual A did not fill out any forms or applications in connection with the investment and did not receive any documents from Rosenbaum related to the investment.

In the months following the investment, Individual A repeatedly asked Rosenbaum to provide documents in connection with the investment. Rosenbaum told Individual A via telephone calls and text messages that he did not have documents for the investment but "he had everything taken care of." Rosenbaum added that he invested the money (or more specifically, purchased the annuity)

through an individual, Individual B, who worked at Company A. FBI agents later interviewed Individual B, who denied receiving any investment money from Rosenbaum or Individual A.

On December 12, 2022, Rosenbaum called Individual A to ask why Individual A had so many questions about the investment. Individual A responded that Individual A had asked Rosenbaum for documents relating to the investment for four months, and Rosenbaum had not provided any documents. Rosenbaum subsequently told Individual A that he was aware that Individual A had been contacted by law enforcement. Rosenbaum asked Individual A to lie to law enforcement and tell them that Individual A gave the $50,000 to Rosenbaum as a loan and not as an investment. Individual A responded that he/she would not lie about the investment to anyone.

Rosenbaum admitted to Individual A that he did not have any documents relating to the investment. On December 15, 2022, Rosenbaum admitted to Individual A that he did not invest the money but instead "borrowed" it without permission and would pay Individual A back with interest over time. Rosenbaum apologized to Individual A for using their "friendship in this matter" and asked Individual A to accept the payment arrangement he proposed. Rosenbaum later emailed Individual A a written "loan agreement" documenting the proposed payment arrangement. Individual A did not sign the agreement. On or about December 17, 2022, Individual A received by mail $5,000 in money orders from Rosenbaum.

## IV. The Government Learns that Rosenbaum Also Took Money from Individual C for Investment.

On December 7, 2022, FBI Special Agents interviewed Individual C, who

resides in Illinois.[2]  During the interview, Individual C provided the following information:

Individual C has known Rosenbaum for several years.  Rosenbaum helped Individual C obtain health insurance in approximately 2018.  In early 2020, Individual C's mother passed away, and Individual C sold her mother's home in April 2021.  After the sale of the home, Individual C asked Rosenbaum for advice about investing the proceeds from the sale of the home because Individual C knew Rosenbaum was a financial advisor.  Rosenbaum told Individual C that Individual C should invest the money with an insurance company because there was better growth.

Among other things, on June 2, 2021, Individual C wrote a check for $50,000 to Rosenbaum for investment with insurance companies.  Pursuant to Rosenbaum's instructions, Individual C made the check payable to "Rosenbaum Family Planning." On August 10, 2022, Individual C wrote another check in the amount of $23,000 to "Rosenbaum Family Planning" for investment with an insurance company.  On November 4, 2022, Individual C wrote a third check in the amount of $13,000 to "Rosenbaum Family Planning" for investment with an insurance company. Individual C believes that Rosenbaum invested the money Individual C gave him with two insurance companies, and Individual C has received documents from both

---

[2]  The government will provide the Court, defense counsel, and pretrial services under separate cover with the interview report of Individual C and supporting materials.

companies relating to her investments.[3]

## LEGAL STANDARD

Pursuant to 18 U.S.C. § 3148, a defendant released on bond under 18 U.S.C. § 3142 shall have his order of release revoked if, after a hearing, the Court finds that: (1) there is probable cause to believe that the defendant committed a federal, state, or local crime while on pretrial release, or clear and convincing evidence that the defendant violated any other condition of release; and (2) there is no condition or combination of conditions of release that will assure that the defendant will not pose a danger to the safety of any other person or the community or the defendant is unlikely to abide by any condition or combination of conditions of release. 18 U.S.C. § 3148(b).

In order to obtain a revocation of a defendant's order of release and pretrial detention, the government bears the burden of establishing by probable cause that the defendant committed a crime while on pretrial release or by clear and convincing evidence that the defendant violated a condition of release. *See* Fed. R. Crim. P. 4; 18 U.S.C. § 3148(b); *United States v. Carr*, Case No. 11 CR 112, 2012 WL 3262821, at *6 (N.D. Ill. Aug. 9, 2012) ("The standard of proof applicable in bond revocation cases is not a particularly rigorous one. The Government need only demonstrate that there is probable cause to believe that a crime has been committed by the defendant while on bond. That requires that the evidence show a fair probability that a crime has

---

[3] The government continues to investigate whether the money Individual C gave Rosenbaum was actually invested with one or more insurance companies.

occurred and that the defendant committed it. While probable cause requires more than a mere suspicion of wrongdoing, its focus is on probabilities, not hard certainties." (internal quotation marks and citations omitted)). As relevant here, it is a crime under 18 U.S.C. §§ 1341 and 1343 to devise and participate in a scheme to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises and execute that scheme through the mail or with an interstate wire communication.

## ARGUMENT

As set forth in this motion, there is probable cause to believe that Rosenbaum committed a crime while on pretrial release—namely, mail and/or wire fraud in furtherance of a scheme to defraud Individual A of money. In addition, there is clear and convincing evidence that Rosenbaum violated the conditions of his release by accepting money from Individuals A and C to "invest" on their behalf. Because there are no conditions of release that will reasonably assure the safety of the community and because Rosenbaum has shown that he is unlikely to comply with this Court's conditions, this Court should issue an arrest warrant for Rosenbaum, and following a hearing, revoke his bond and order that he be detained pending trial.

**I.      There is Probable Cause to Believe that Rosenbaum Committed a Crime in Connection with Individual A and Clear and Convincing Evidence that He Violated the Conditions of His Pretrial Release.**

As set forth above, Rosenbaum took $50,000 from Individual A as payment for a short-term annuity that he never purchased. Rosenbaum did not provide Individual A any documents relating to the investment and claimed that he purchased the

annuity through Individual B at Company A, which Individual B has since denied. When Individual A continued to question Rosenbaum about the investment, Rosenbaum eventually admitted that he did not invest the money and instead "borrowed" it from Individual A without permission. He asked Individual A to lie to law enforcement about the investment and told Individual A that he would repay the money he took, going so far as to email Individual A a written "loan agreement." Rosenbaum's text messages and emails to Individual A in connection with the fraudulent investment constitute interstate wire communications that fall within the ambit of wire fraud under 18 U.S.C. § 1343. *See United States v. Jalloh*, Case No. 15 CR 129, 2016 WL 4939102, at *1 (C.D. Cal. Sept. 13, 2016) (revoking defendant's bond after government presented evidence demonstrating probable cause to believe that defendant committed additional acts of wire fraud while on pretrial release).

Furthermore, regardless of whether or not Rosenbaum committed a crime in his financial dealings with Individuals A and C (and it appears that he did at least as to Individual A), he indisputably violated this Court's conditions of release by involving himself in the investments of others outside of his immediate family. Nearly two years ago, in April 2021, the Court released Rosenbaum pending trial with the requirement that he comply with certain conditions, one of which was, in light of his pending mail and wire fraud charges, that he have no involvement in the sale, purchase, or distribution of any investment or insurance product to any individual outside of his immediate family. R. 11 at 2. Less than two months later, in June 2021, Rosenbaum accepted a $50,000 check from Individual C for investment

with various insurance companies. He later accepted money from Individuals A and C for investment in August 2022 and November 2022. Neither Individual A nor Individual C is an immediate family member. As a result, Rosenbaum violated this Court's investment-prohibition condition each time he accepted money for investment from Individuals A and C, and for that reason alone, his bond should be revoked.

## II. There Are No Conditions or Combination of Conditions of Release that Will Assure that the Defendant Will Not Pose A Danger to the Safety of Any Other Person or the Community and Defendant Is Unlikely to Abide by Any Conditions.

When the government establishes probable cause that the defendant committed a crime on pretrial release, it creates a rebuttable presumption that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community. *See Carr*, 2012 WL 3262821 at \*5 ("If the court finds that there is 'probable cause' to believe that while on release the defendant committed a federal offense, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community. If, however, the judicial officer finds that there are conditions of release that will assure that the person will not pose such a danger and that the person will abide such conditions, the court shall treat the person in accordance with the provisions of § 3142 and may amend the conditions of release accordingly."). As courts have noted, danger to the community is not limited to physical danger and also refers to unlawful conduct that is economic in nature. *Id.* (collecting cases). At the show cause hearing, the government will establish that Rosenbaum's bond should be revoked because there is

no condition or combination of conditions of release that will assure that he will not pose an economic danger to the safety of any other person or the community, and in any event, Rosenbaum is unlikely to comply with any such conditions.

Notwithstanding the strict conditions set by this Court, within months after his release, Rosenbaum violated this Court's order by "investing" money for others (*i.e.*, Individual C). As set forth above, Rosenbaum also took $50,000 from Individual A in August 2022, which he claimed he would invest but did not. To date, Rosenbaum has not repaid Individual A in full, and while under pretrial supervision, he has continued to provide false statements and promises to Individual A regarding that investment. (As previously stated, it is unclear at this time whether Rosenbaum stole money from Individual C.) Rosenbaum's conduct and communications with Individual A show that he is a serious economic danger to the community because he continues to target individuals and defraud them out of their money. As a result, pretrial detention is the only option. *See Jalloh*, 2016 WL 4939102 at *2 (holding that defendant was a danger to the community despite any possible pretrial conditions when defendant continued to engage in investor fraud while on pretrial release).

Furthermore, Rosenbaum's conduct has also demonstrated that he is unlikely to abide by any condition or combination of conditions imposed by this Court. As this Court knows, Rosenbaum previously disregarded this Court's express prohibition that he not operate a motor vehicle and did so anyway, which caused this Court to modify his conditions of release to home incarceration with location monitoring. His

11

indifference to this Court's order of release has extended to other conditions as well. Despite facing imprisonment of up to 20 years if convicted of the underlying charges, Rosenbaum has brazenly continued his fraudulent behavior in violation and complete disregard of the conditions of his release and promises to the Court. His actions clearly demonstrate that he cannot be trusted to abide by his conditions of release again, making pretrial detention the only viable option. *See Carr,* 2012 WL 3262821 at *9 (revoking defendant's bond because it was "idle to suggest that if given another chance, [defendant] would abide by the very conditions of bond he promised to honor at the time bond was originally granted and which he so quickly and brazenly breached.").

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court issue an arrest warrant for defendant and, after a hearing, revoke his bond and order that he be detained.

Dated: January 4, 2023                    Respectfully submitted,

                                          JOHN R. LAUSCH, JR.
                                          United States Attorney

                                     By: */s/Prashant Kolluri*
                                          PRASHANT KOLLURI
                                          Assistant United States Attorney
                                          219 South Dearborn Street
                                          Chicago, Illinois 60604
                                          (312) 353-5300