IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 21-cr-00239-1 |
| | ) | |
| DANIEL ROSENBAUM, | ) | Honorable Manish Shah |
| Defendant. | ) | |

## **DEFENDANT'S  SENTENCING MEMORANDUM**

Defendant, Daniel Rosenbaum**,** respectfully requests that this Honorable Court impose a sentence below the sentencing guideline range. Defendant respectfully requests that the Court sentence him to 36 months. In support of this request, Daniel Rosenbaum, respectfully submits the following Memorandum for the Court's consideration and argues that a sentence of 36 months would be "sufficient but not greater than necessary" to achieve the statutory sentencing goals. The guideline range is supported by the factors set forth in 18 U.S.C. 3553(a).

## **LEGAL STANDARD**

The Supreme Court's decision in *United States v. Booker*, 125 S. Ct. 738 (2005), has dramatically changed the procedure for sentencing in federal court. The proper procedure for sentencing now requires sentencing courts to follow four principles. First, the District Court must correctly calculate a defendant's Guidelines range. *Gall v. United States*, 128 S.Ct. 586, 602 (2007). Second, the District Court must apply 18 U.S.C. §3553(a) and the parsimony principle. *Id* at 602. See also *Kimbrough v. United States*, 128 S.Ct. 558, 564 (2007). Third, the Court, when determining which sentence is just and proper, cannot presume that the Guidelines are reasonable. *Nelson v. United States*, 129 S.Ct. 890 (2009); *Gall*, 128 S.Ct. at 596-97. In fact, courts cannot require an extraordinary reason or even a "good reason" to deviate from the Guidelines under the §3553(a) factors. *United States v. Ross*, 501 F.3d 851 (7th Cir. 2007).

Fourth, the judge may impose a sentence below the guidelines range based on a policy disagreement with a particular Guideline, even in an ordinary case. *Spears v. United States*, 129 S.Ct. 840, 841 (2009).

Courts are required to consider all the factors set forth in 18 U.S.C. §3553(a) for determination of a sentence. *See also United States v. Wachowiak*, 496 F.3d 744, 747-48 (7th Cir. 2007), *United States v. Dean*, 414 F.3d 725, 728 (7th Cir. 2005).

The primary directive in §3553(a) is that this Court must impose a sentence that is "sufficient, but not greater than necessary," to satisfy established sentencing objectives. 18 U.S.C. §3553(a). These sentencing objectives specifically set forth in §3553(a)(2), require this Court to impose a sentence based on careful consideration of the need to: (1) reflect the seriousness of the offense, (2) promote respect for the law, (3) provide just punishment, (4) afford adequate general deterrence, (5) protect the public from further offenses committed by the defendant, and (6) provide the defendant with needed treatment and training in the most effective manner.

In addition to the purposes of sentencing, §3553(a) requires this Court to consider the following additional factors: (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the kinds of sentences available, (4) the sentencing guidelines range, (5) pertinent guidelines policy statements, (6) the need to avoid unwarranted sentencing disparities, and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. §3553(a) (1), (3)-(7). Significantly, the Supreme Court emphasized in *Booker* that under the Sentencing Reform Act, no limitation should be placed on the information concerning the background, character, and conduct of a person convicted of an offense that a court may receive

and consider for the purpose of imposing an appropriate sentence. 125 S.Ct. at 759 (citing 18 U.S.C. §3661).

As explained below, based on the sentencing factors set forth in 18 U.S.C. §3553(a), Daniel Rosenbaum is a good candidate for a sentence below the sentencing guideline range. Such a sentence would be "sufficient, but not greater than necessary" to effectuate the statutory sentencing goals.

## OBJECTIONS/FACTUAL CORRECTIONS TO THE PSIR

Mr. Rosenbaum has reviewed the PSIR with Defense Counsel. Mr. Rosenbaum indicates that there is a factual error in the PSIR. The PSIR refers to a statement where Mr. Rosenbaum is essentially blaming his father's manner of raising Daniel and his brothers as a catalyst for the reasoning why he committed these crimes. Mr. Rosenbaum objects to that assertion in the PSIR as he indicates that is not an accurate representation of what was discussed during the interview with the Probation Department. Mr. Rosenbaum submits that his father was generous and unsparing to his children. Mr. Rosenbaum also wanted to be the same unselfish provider but unfortunately lost control over his actions. He does not blame his father for his actions as he disputes this assertion in the PSIR.

## GUIDELINE RANGE

Daniel Rosenbaum has voluntarily pled guilty pursuant to plea agreement between the Government and Rosenbaum through his undersigned attorneys to Count three, Wire Fraud in violation of 18 USC §1343.

**A. Base Offense Level**

The Probation Department, the Government, and the Defendant all agree that the base offense level is 7 because there is a maximum term of imprisonment of 20 years or more. USSG §2B1.1(a)(1).

**B. Adjustments**

I.      Loss Amount:

Because the loss amount attributable to Daniel Rosenbaum is $1,435,394.00 which is between $550,000.00 and $1,500,000.00 the base offense level is increased by 14 levels. USSG §2B1.1(b)(1)(H).

II.      Aggravating Role

Defendant agrees with the Probation Department that a two-level addition is therefore warranted because the instant offense resulted in substantial financial loss to at least 13 victims. Defendant disagrees with the Government's assertion that a four-level enhancement is warranted as it is the Defendant's position that the instant offense did not result in substantial financial hardship to 5 or more victims. USSG §2B1.1.(b)(2)(A)(i).

Defendant disagrees with the Probation Department and the Government that an additional two-level enhancement is warranted as it is the Defendant's position that that offense did not involve sophisticated means. USSG §2B1.1.(b)(10)(C).

Defendant agrees with the Probation Department and the Government that a two-level enhancement is warranted for stipulated offenses 2 and 3 as they did involve the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification.  USSG §2B1.1.(b)(2)(A)(i).

Defendant agrees with the Probation Department and the Government that a two-level addition is warranted because Defendant knew that victims Richard Nevins, Peggy Deats and Megan Deats were vulnerable. USSG §3A1.1.(b)(1).

Defendant agrees with the Probation Department and the Government that a two-level enhancement is warranted because the offense involved the Defendant abusing a position of private trust in a manner that significantly facilitated the commission or concealment of the offense. USSG §3B1.3.

Defendant disagrees with the Probation Department that the statutory sentencing enhancement applies under 18 U.S.C. 1347 applies and a three-level increase is warranted. USSG §3C1.3. The separate misconduct Mr. Rosenbaum was arrested for committing while on pretrial release is not an offense enumerated under USSG §3C1.3. Mr. Rosenbaum was not convicted of any crimes related to the separate misconduct. He was arrested on violations of his conditions of release for committing said crimes. Thus, this enhancement would not apply.

III.     Mitigating Role

Mr. Rosenbaum argues that he should receive an additional decrease of two points pursuant to USSG 4C1.1. USSG 4C1.1 has an effective date of November 1, 2023. Mr. Rosenbaum meets the criteria promulgated in USSG 4C1.1(a)(1)-(10) and has a criminal history score of zero. He would be a zero-point offender which would apply in this instant matter. The Probation Department agrees that Mr. Rosenbaum is eligible for the two-point reduction and applies the two-point reduction. Mr. Rosenbaum disagrees with the Probation Department's note that Defendant will not qualify for the reduction if the court makes a finding at sentencing that the offense caused substantial financial hardship. As it is Mr. Rosenbaum's position that the offense did not result in substantial financial hardship. Further, it is Mr. Rosenbaum's position

5

that there is no support for the Court to make such a finding to disqualify him from receiving the additional two-point reduction under USSG 4C1.1.

Acceptance of Responsibility

All parties agree that Daniel Rosenbaum has accepted responsibility for his conduct and his offense level should be reduced by two points.

Additionally, all parties agree that Daniel Rosenbaum made timely notification of his intention to enter a plea agreement and his offense level should be reduced by an additional point.

IV.     Adjusted (Total) Offense Level

Based on the above, Daniel Rosenbaum argues and requests that the Court find that his total offense level is 24.

**C. Criminal History Points**

Defendant agrees with the Government and Probation Department that he has a criminal history score of 0 and he is in criminal history category of I.

**D. Sentencing Guideline Range**

Based on the above, Daniel Rosenbaum argues that the correct sentencing guideline range, based on a total offense level of 24 and a criminal history category of I, is 51-63 months.

## <u>NATURE AND CIRCUMSTANCES OF THE INSTANT OFFENSE AND STIPULATED CONDUCT</u>

The nature of the instant offense and stipulated offense is not in dispute. Mr. Rosenbaum acknowledges and has taken full responsibility for the charged offense and stipulated offenses. He agrees with the description of the charged offense and the stipulated offenses provided in the Government's Version of the Offense incorporated into the Presentence Investigation Report. (PSIR).

**The Conduct Did Not Result in Substantial Hardship of Five or More Victims**

Mr. Rosenbaum respectfully disagrees that there was a substantial hardship resulting from his conduct on five or more victims. Specifically identified as Richard Nevins, Sheila Herron, Stephen Fine, Kathleen Chyna, and Traci Nagi in the PSIR.

Factors that the USSG considers include i. Becoming insolvent, ii. Filing for Bankruptcy under the Bankruptcy Code, iii. Suffering substantial loss of a retirement, education, or other savings, or investment fund, iv. Making substantial changes to his or her employment, such as postponing his or her retirement plans, v. Making substantial changes to his or her living arrangements, such as relocating to a less expensive home and vi. Suffering substantial harm to his or her ability to obtain credit; USSG 2B1.1(F).

When applying these factors in reference to all five of these victims, factors number i, ii, and vi do not apply to any of the victims. Based upon the victim impact statements provided, none of the 5 victims named became insolvent, filed bankruptcy, or suffered substantial harm to his or her ability to obtain credit. Additionally, none of the victims based on the victim impact statements had to make substantial changes to his or her living arrangements such as relocating to a less expensive home.

Further, in reference to Traci Nagy, it is the defense position that none of the factors apply to her situation as in addition to the inapplicability of the factors as to all five victims asserted by the Government and Probation, factor iv does not apply as there are no indications that Ms. Nagy made any substantial changes to her employment by postponing her retirement plans or any other substantial change. Additionally, it is the defense position that factor iii doesn't apply as the Government cannot show it was a substantial loss of retirement, education, other savings, or an investment fund. As the nature of the money was an inheritance and does

not meet the categories of retirement, education, or other savings. While it may meet the criteria of an investment fund, the money was strictly going to be used to purchase a home that she wanted. Despite the loss, she did still ultimately purchase the home with a personal loan with a high interest rate. Additionally, Ms. Nagy only makes a general description of a financial strain that placed a significant burden on her ability to meet her basic needs and obligations. Thus, this does not rise to the level of substantial loss and clearly shows that the additional four-point enhancement sought by the government is inapplicable to Mr. Rosenbaum.

**The Conduct Was Not One That Would Be Considered Committed by Sophisticated Means**

Mr. Rosenbaum objects to this enhancement being applied to his sentencing guidelines.

The "sophisticated means" enhancement applies if the offense "involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means." U.S.S.G. § 2B1.1(b)(10)(C). The Sentencing Commission added the requirement that the defendant "intentionally engaged in or caused the conduct constituting sophisticated means" in 2015 to clarify that application of this enhancement should be based "on the defendant's own intentional conduct" rather than "on the basis of the sophistication of the overall scheme without a determination of whether the defendant's own conduct was 'sophisticated.'" U.S.S.G. Supp. App. C, Amdt. 792 (Reason for Amendment). An application note explains that "'sophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." U.S.S.G. § 2B1.1 cmt. n.9(B). The enhancement "does not require a brilliant scheme, just one that displays a greater level of planning or concealment than the usual [fraud] case." *United States v. Lundberg*, 990 F.3d 1087, 1097 (7th Cir. 2021). Because all fraud has some degree of concealment, "the adjustment for sophisticated means is warranted only when the conduct shows a greater level of planning or

concealment than a typical fraud of its kind." *United States v. Ghaddar*, 678 F.3d 600, 602 (7th Cir. 2012)

Mr. Rosenbaum asserts that did not involve a greater level of planning or concealment than a typical wire fraud scheme. With the exception of issuing occasional fabricated annuities contracts and statements to a small number of victims to conceal his fraud, this scheme did not involve sophisticated means. After making false statements and misrepresentations, the victims in this case would simply provide the money to Mr. Rosenbaum through wire transfers or checks or by other means. He would then deposit it into certain bank accounts that were under his name or control. And then he would simply use the money for his own personal and family expenses. This is not a case that involves sophisticated means. This was nothing more than a run of the mill wire fraud scheme.

## HISTORY AND CHARACTERISTICS OF THE DEFENDANT

## FAMILY

The PSIR sets forth in great detail Mr. Rosenbaum's life and upbringing. Mr. Rosenbaum asserts that the PSIR accurately details all aspects of his life related to his history and characteristics.

Daniel Rosenbaum is 56 years old and is born on May 1, 1967 in Milwaukee, Wisconsin. Rosenbaum was the youngest of three children born to James Rosenbaum and Marcia Rosenbaum. They married in 1959. Rosenbaum reports a good relationship with his parents growing up. Rosenbaum also reports that he and his brothers had a good upbringing and that there were no issues related to substance abuse, mental illness, physical abuse, or child abuse in the household. His father tragically passed away as a result of a fatal heart attack in 2012. He was 72 years old. Daniel reports a continuing close relationship with his mother who is currently

86 years old. They talk almost daily. Rosenbaum further reports that he shares a close relationship with both of his brothers, Michael Rosenbaum, 61 years old and Thomas Rosenbaum, 59 years old. However, his relationship with his brothers has become somewhat strained due to the charges in the instant case. Despite this, Daniel's brothers continue to remain supportive of him.

Rosenbaum was married to Jill Dodak from 1997 to 2011. They have since divorced. Rosenbaum indicated that the marriage ended due to Ms. Dodak's alcoholism and the negative impact it had upon their family. Rosenbaum reports they divorced amicably and remain friends. Rosenbaum and Ms. Dodak have one child together, Hannah Rosenbaum. Daniel reports a close relationship with his daughter who is now 24 years old. They communicate with each other often and are supportive of each other. Despite the charges in this case, their relationship remains unaffected. Hannah currently resides in Scottsdale, Arizona and is employed as a teacher. She is also engaged and is set to be married this coming summer. Rosenbaum further reports that he and Ms. Dodak were able successfully co-parent Hannah together throughout her entire life despite their divorce. In significant part, this co-parenting relationship was important to Daniel to ensure that Hannah had the best upbringing possible and that the divorce didn't adversely affect her in any manner.

Since the divorce, Rosenbaum ultimately met and started a relationship with Heather Peterson. They have been together since 2014. They have one child together, Madison Leigh Rosenbaum, who is currently eight years old. They all previously resided together in Brown Deer, Wisconsin prior to his incarceration in this case. Rosenbaum and Ms. Peterson are engaged to be married. Rosenbaum keeps in regular contact with Ms. Peterson and Madison. Rosenbaum particularly looks forward to his calls with Madsion as they partake in a daily

activity called "Questions with Father." Rosenbaum reports a great relationship with Madison. Rosenbaum further reports an overall good relationship with Ms. Peterson with occasional discord which was always ultimately resolved amicably. Mr. Rosenbaum further reports that he misses both Heather and his children dearly. While speaking to them on the phone provides a level of solace to Mr. Rosenbaum, he is heartbroken every day that he cannot be there with them like he should be and is supposed to be.

## PHYSICAL CONDITION

Mr. Rosenbaum suffers from an array medical conditions that require constant care, management and supervision under a doctor's care. Those conditions include: Sleep Apnea, High Blood Pressure, Psorasis, Hypertension, Mixed Hypelipeidemia, Acute Choleystitis, Chronic depression, Anxiety, and Cornoray Artery Disease. The combination of these conditions significantly impact Mr. Rosenbaum's physical health and psychological well-being. Additionally, these impacts have been exacerbated by his incarceration in the instant matter. He has been unable to obtain the necessary level of medical treatment that he received prior to his incarceration due to the limited resources of Jerome Combs Detention Center.

Since 2010, Rosenbaum received regular medical care from Dr. Jeffrey Blankenburg in Waukesha, Wisconsin. Rosenbaum was treated by Dr. Blankenburg for High Blood Pressure, High Cholesterol, Psoriasis, Memory Loss, Sleep Apnea And Depression.

Additionally, Rosenbaum was diagnosed with cornoary artery disease back in 2010. This ultimately resulted in Rosenbaum to undergo an angioplasty procedure where stents were implanted in his heart. He had this procedure done on two ocassions. Once in 2010 and then subsequently in 2015. He has been under regular care of a cardiologist since 2010 and continues to require consistent medical care.

Mr. Rosenbaum was also diagnosed with Sleep Apnea. He was previously using a CPAP machine prior to his incarceration in this matter. He continues to need treatment and care for his condition. He unfortunately has not used a CPAP machine since his incarceraation in this matter. This has had a negative impact on his gradually declining health.

Mr. Rosenbaum further reports that he has been experiencing blackouts for approximately the past 4 years. He reports that these blackouts are due to stress that he is experiencing which have resulted in memory loss. He was prescribed medications, specifically Bupropion and Naltrexone to manage this condition. These medications helped manage this condition and any blackout episodes. Since being incarcerated, his medication for Naltrexone was discontinued and he experiences episodes where he falls asleep for long periods of time.

Since being held in detention at Jerome Combs Detention Center, Mr. Rosenbaum has experencied an prolethra of complications in respect to his medical conditions. In January of 2023 shortly after being placed in Jerome Combs, Mr. Rosenbaum received emergency medical treatment for acute cholecystitis which resulted in Mr. Rosenbaum undergoing a cholecystectomy procedure which was the surgical removal of his gallbladder. Additionally, Mr. Rosenbaum was taken to the emergency room at Riverside Hospital in August of 2023. He was treated for Vasovagal Syncope which is a condition where an individual's heart rate and blood pressure drop due to a malfunction in the individual's nervous system that regulates those processes. He also has been experiencing significant issues with his Psorias which continues to be an issue of some concern. While he was prescribed Skyrizi, he continues to complain of significant discomfort.

Mr. Rosenbaum submits that his array of medical issues and the complications that he physically experiences from said medical issues supports his position for a below guidelines

sentence. As he requires specific treatment, regimines and medical equipment from several doctors, the complexity and array of his medical conditions cannot be fully addressed by the Bureau of Prisons.

## MENTAL AND EMOTIONAL HEALTH

Mr. Rosenbaum reports that he did not experience any mental illnesses or emotional issues prior to 2022. Mr. Rosenbaum reports that he has been experiencing feelings of depression and being overwhelmed. He was prescribed Buproprin which Mr. Rosenbaum indicates that he found effective. He started engaging with mental health services at the Kankakee County Jail where he was later diagnosed with Major Depressive Disorder. He participated in a few counseling sessions offered by the jail but discontinued these services due to being in the presence of other inmates during these sessions. He was not comfortable with that particular arrangement and preferred one on one private counseling sessions. He does describe his mental health as stable. While he does still experience bouts of depression and anxiety due to his current circumstances, he does remain hopeful for the future and being able to reunite with his family after release from incarceration.

## SUBSTANCE ABUSE ISSUES

Mr. Rosenbaum reports that he does not suffer alcohlism and only drank in college from 1985 to 1989. He admits that he started abusing the Percocet in 2019. He turned to abusing Percocet during difficult periods in his life as the drugs made him feel relaxed and at times, "indestructable." As he felt the Percocet helped him cope with the stress and overwhelming emotions of depression and anxiety he felt during these last few years. He also felt that the Percocet helped him get through a typical day when he was overwhlmed with stress, depression and anxiety. Mr. Rosenbaum also indicated the Perocet caused him to experience blackouts. He

has since started treatment for opiate addiction through Jerome Combs so he can deal with and overcome this issue.

## EDUCATION AND EMPLOYMENT

Mr. Rosenbaum obtained his high-school diploma from Highland Park High School in Highland Park, Illinois, in 1985. He went on to attend Drake University in Des Moines, IA from 1985 to 1987 and then Columbia College in Columbia, Missouri from 1987 to 1989. He finished the remainder of his required college credits by taking online courses through Columbia College and ultimately graduated with a bachelor's degree in business administration with a concentration in Marketing. Mr. Rosenbaum became licensed to sell life and health insurance in the mid-1990s. He became licensed to sell insurance in Illinois, Wisconsin, Washington DC and possibly California in 2012. He surrendered his license in 2020 due to the instant case when it was originally charged in the Circuit Court of Cook County.

Mr. Rosenbaum worked for several employers which are detailed in the PSIR. Mr. Rosenbaum was gainfully employed for the majority of his life. Notable employers include Enterprise Rent-a-Car, Job Placement Services, and United Cerebral Palsy. Mr. Rosenbaum was working at Go! Calendars and Games in Wisconsin up to the point of his incarceration in the instant case.

## CRIMINAL HISTORY

Daniel Rosenbaum's criminal history is accurately stated in the PSIR. He has no prior criminal convictions in any jurisdiction, State or Federal. He had some arrests, mostly for traffic offenses, which did not result in a conviction or the prosecution was declined.

Additionally, Daniel Rosenbaum objects to the Probation Department's inclusion of paragraphs 60 through 61 and 65 through 69 of the PSIR. These paragraphs list arrests that did

not result in convictions, and in which Daniel Rosenbaum is presumed innocent and continues to maintain that presumption on said paragraphs. The inclusion of these paragraphs has the potential to prejudice him and Daniel Rosenbaum requests that they be stricken from the PSIR and not to be considered by this Honorable Court at sentencing.

## A SENTENCE OF 36 MONTHS INCARCERATION IS SUFFICIENT BUT NOT GREATER THAN NECESSARY

At the age of 56 years old, Mr. Rosenbaum prior to his arrest in the instant case and subsequent thereafter, had no prior criminal background. His lack of criminal background is reflective of a man who after living an overall law-abiding life turned down the wrong path and got himself in over his head. While Mr. Rosenbaum is not seeking to depreciate the seriousness of his conduct nor provide a justification for said conduct, this would best be described as an aberration that spun out of control and became an addiction of sorts. While not necessarily related to drugs or gambling, it became a situation where he attained a lifestyle that he in his mind felt he needed to keep up with. This lifestyle wasn't one that was full of luxury boats, luxury vacations, drugs, prostitutes, and multi-acre mansions. This was a lifestyle where Daniel felt obligated and compelled to use the money to pay bills and help everyone else in his life. He wanted to make sure everyone around him was comfortable and got everything that they needed or even wanted. The money he took wasn't necessarily used exclusively on himself and his desires for a luxurious life. As time continued on, he became overwhelmed in keeping up with this said lifestyle. Which resulted in him continuing on with this misconduct and continuing to bury himself deeper in the proverbial hole. With that being said, Mr. Rosenbaum is truly remorseful for the circumstances that have placed him in this position that he finds himself in before this Honorable Court. Mr. Rosenbaum also wants to express that he is truly remorseful

for the pain he has caused all the victims and the financial damage that resulted in their lives from his misconduct.

While Mr. Rosenbaum did deviate from the law-abiding path that he followed for nearly his entire life, there is great potential for rehabilitation. He can be returned to the status of a law-abiding citizen. He has no history of violence, no prior criminal convictions and has been and continues to be a good father to his children.

The crime to which Daniel Rosenbaum entered a voluntary plea of guilty to is a non-violent financial crime and his conviction includes mandatory restitution in the approximate amount of $1,150,086.00. While this restitution is not necessarily considered punishment, the financial impact of the restitution that is calculated at over one million dollars will have a significant impact on the rest of Mr. Rosenbaum's life. As he will essentially be living in poverty for his remaining years. He will barely be able to make a living to support himself let alone to support his family. The appearance of a Federal Criminal Conviction for Wire Fraud will scream volumes to future potential employers. And not in a positive way. It is highly unlikely he will be able to attain a lucrative position or any position that requires him to serve in a position of trust or in a position of managing the finances of a company or other individuals. While he will most likely find some form of employment, it is expected that he will be essentially working to not just pay back the restitution owed but essentially live at the barest minimum for his remaining days. He will essentially be living in a debtor's prison for the rest of his life. This is a significant aspect that should be considered by this Honorable Court in determining the appropriate term of incarceration.

Looking at his criminal history, 36 months is a significant term of incarceration given his age, his multitude of health issues, and the fact that he has never served any kind of prison

sentence let alone any significant period of incarceration with the exception of his current custodial status in Jerome Combs Detention Center. This will also be the longest period of time that Mr. Rosenbaum has ever been away from his family and especially his children. For Daniel Rosenbaum, this period of imprisonment is a significant punishment and represents a sentence that is sufficient but not greater than necessary.

## CONDITIONS OF MANDATORY SUPERVISED RELEASE

### Mandatory

Daniel Rosenbaum does not object to any of the Mandatory Conditions of Supervised Release.

### Discretionary

Daniel Rosenbaum does not object to any of the Discretionary Conditions except he requests that the probation officer not visit him at any future place of employment he may obtain after his release as this may embarrass him or jeopardize said employment. There are many other ways for the probation officer to make verifications and ensure compliance.

### Special Conditions

Daniel Rosenbaum does not object to any of the Special Conditions of Supervised Release.

## REQUEST

Daniel Rosenbaum is requesting to be incarcerated at FCI Oxford in Oxford, Wisconsin. Mr. Rosenbaum is making this request as it is near his family. Additionally, Mr. Rosenbaum is respectfully requesting that he be allowed to self-surrender to the U.S. Marshalls after being released on home detention or home incarceration. This would allow him the opportunity to receive the medical care that he has not received at Jerome Combs including a visit to his

cardiologist and physician. Additionally, if this Honorable Court would allow him to be temporarily released then he also would ask to stay the imposition of his sentence until after July 12, 2024 which is the day of his daughter's wedding in Milwaukee, Wisconsin.

## **CONCLUSION**

Daniel Rosenbaum fully understands and accepts the wrongfulness of this crime and takes full responsibility for what he did. Notwithstanding his criminal behavior, Daniel Rosenbaum is not a person beyond redemption. He is a hardworking, family oriented, and productive member of society.

WHEREFORE, Defendant, Daniel Rosenbaum, respectfully prays this Honorable Court sentence him to a sentence below the guideline range of 36 months plus a term of supervised release and for any such other relief as this Court deems just.

Respectfully submitted,

By:

/s/Steven R. Decker
Attorney for Defendant

/s/James F. DiQuattro
Attorney for Defendant

Steven R. Decker
900 West Jackson Blvd., Suite 5-East
Chicago, Il 60607
312-738-3773
Stevendecker49@gmail.com

James F. DiQuattro
900 West Jackson Blvd., Suite 5-East
Chicago, IL 60607
312-627-9482
james@diquattrolawoffices.com